POSNER, Circuit Judge.
 

 Section 364 of the Bankruptcy Code empowers the bankruptcy judge to authorize the bankrupt to borrow money and give the lender priority over certain other creditors. Subsequent reversal, by the district court or the court of appeals, of the grant of priority does not affect the validity of the priority if it was granted “to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal,” unless the transaction was stayed pending appeal. 11 U.S.C. § 364(e). We are required in this case to interpret and apply the term “in good faith.”
 

 Before Wisconsin Steel (as we shall refer jointly to the affiliated corporations that are the bankrupts in this ease) went bankrupt, the Chase Manhattan Bank had loaned it money secured by a lien on inventory and by a bank account that the company maintained with Chase. Wisconsin Steel defaulted, and Chase set off against these defaults the funds in the account. Wisconsin Steel was accustomed to paying its employees with checks drawn on this account. Chase’s set-off caused those checks to bounce, which induced Wisconsin Steel to petition for protection under Chapter 11 of the Bankruptcy Code.
 

 The union representing Wisconsin Steel’s workers filed a complaint in the bankruptcy court seeking payment to its members of their unpaid wages. Chase was named as a defendant along with Wisconsin Steel. The union claimed that it had a lien on the same inventory on which Chase claimed a lien. Although the bankruptcy court authorized Chase to take possession of the inventory, the union, by picketing Wisconsin Steel, prevented Chase from doing so. Eventually a settlement was reached by which Chase agreed to lend Wisconsin Steel some $1.7 million in exchange for the union’s dropping its suit and allowing the inventory to be removed. The agreement stated that Wisconsin Steel would pay out of the proceeds of the loan $77,000 to the union to reimburse it for attorneys’ fees and other legal expenses incurred in its suit, and the rest (except for some small amounts for various taxes) to the company’s employees in settlement of their claims. The agreement further provided that the entire loan was to receive the priority that 11 U.S.C. § 507(a)(3) gives wage claims.
 

 Since the proposed loan involved the grant of a special priority to the lender, the bankruptcy judge’s approval was required by section 364. He gave it, over the objection of the Official Creditors’ Committee of WSC Sales Company, representing the general creditors of Wisconsin Steel, that the priority should not extend to the $77,000
 
 *947
 
 earmarked for the union’s lawyers. The Committee appealed to the district court from this part of the bankruptcy judge’s order but the district court dismissed the appeal as moot. The Committee appeals that dismissal to this court.
 

 The bankruptcy judge’s order was never stayed. Therefore, if in lending Wisconsin Steel $77,000 to pay the union’s legal expenses Chase was acting in good faith, its priority could not be affected by the validity of the order and the issue of validity is therefore moot as the district court held. See, e.g.,
 
 In re Dutch Inn of Orlando, Ltd.,
 
 614 F.2d 504, 506 (5th Cir. 1980). But if Chase was not acting in good faith, the Committee was entitled to have the merits of its objection to the grant of priority adjudicated.
 

 Section 364(e) is explicit that knowledge of the pendency of an appeal from a bankruptcy judge’s order granting a lender special priority does not forfeit the protections that the statute gives to a lender who is in good faith, even though such knowledge implies the further knowledge that there are objections to the order. Therefore the mere fact that Chase knew the Committee objected to its receiving a special priority with regard to that portion of the loan that was to pay the union’s legal expenses does not show bad faith. See
 
 In re Rock Indus. Mach. Corp.,
 
 572 F.2d 1195, 1199 (7th Cir. 1978), dealing with a parallel provision relating to purchasers in good faith of a bankrupt’s property. These provisions seek to overcome people’s natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge’s approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge. The proper recourse for the objecting creditor is to get the transaction stayed pending appeal. See, e.g.,
 
 In re Roberts Farms, Inc.,
 
 652 F.2d 793, 796-98 (9th Cir. 1981).
 

 But all this presupposes good faith. See, e.g.,
 
 Local Jt. Exec. Bd., AFL-CIO
 
 v.
 
 Hotel Circle, Inc.,
 
 419 F.Supp. 778, 783 (S.D.Cal.1976), aff’d on other grounds, 613 F.2d 210 (9th Cir. 1980). And while it is clear as we have said that knowledge that there are objections to the transaction is not enough to constitute bad faith, we can find neither cases nor legislative history, pertaining either to good faith lenders to bankrupts or to good faith purchasers from bankrupts, that tell us what is enough. Chase argues that so long as the terms of the transaction are not misrepresented to the bankruptcy judge, as they were not here, the creditor may rely on the bankruptcy judge’s order unless it is stayed, no matter how obviously erroneous the order is. But if this is what Congress intended, the words “in good faith” could have been deleted, as it would be perfectly clear even without them that an order obtained from a bankruptcy judge by fraud was ineffective to put the lender who procured the order ahead of other creditors. We assume the statute was intended to protect not the lender who seeks to take advantage of a lapse in oversight by the bankruptcy judge but the lender who believes his priority is valid but cannot be certain that it is, because of objections that might be upheld on appeal. If the lender
 
 knows
 
 his priority is invalid but proceeds anyway in the hope that a stay will not be sought or if sought will not be granted, we cannot see how he can be thought to be acting in good faith.
 

 The loan agreement here stated that $77,-000 of the proceeds would be used to pay the union for attorneys’ fees and other legal expenses incurred in the prosecution of the union’s action for the unpaid wages of its members. The agreement thus gave the union a claim against the bankrupt for $77,-000 and simultaneously paid it in full, and Chase’s priority meant that the burden would be borne by the bankrupt estate, in effect the general creditors, rather than by Chase itself.
 

 Viewed realistically, as a claim by the union’s attorneys for time and expenses incurred in prosecuting the union members’
 
 *948
 
 claims for unpaid wages, the union’s claim not only was not entitled to priority over the claims of the general creditors but could not be paid out of the bankrupt’s estate at all. Subject to exceptions that Chase does not claim the union’s attorneys come within, the rule is that no allowance will be made to a creditor’s attorney for proving his client’s claim. E.g.,
 
 In
 
 re
 
 Peerless Mfg. Co.,
 
 523 F.2d 110 (7th Cir. 1975);
 
 In re Joslyn,
 
 224 F.2d 223 (7th Cir. 1955);
 
 Cox v. Elliott,
 
 122 F.2d 851 (8th Cir. 1941);
 
 In re L.E. Elliott Brokerage Co.,
 
 48 F.Supp. 144 (D.Kan.1942). These were not Chapter 11 cases, but it is not suggested that that is a relevant distinction. Thus we do not understand Chase to be questioning the authority or applicability of these precedents — assuming we have characterized the union’s claim correctly, as we think we have. We cannot think it makes a difference that the nominal recipient of the payment was the union rather than its lawyers. The payment is denominated for legal fees and expenses and we have no doubt that the lawyers actually received it. At oral argument Chase’s counsel was not quite willing to concede this but he allowed that he “suspected” it was so, which will do.
 

 Where it is evident from the loan agreement itself that the transaction has an intended effect that is improper under the Bankruptcy Code, the lender is not in good faith, and it is irrelevant what the improper purpose is. If the loan agreement had stated that Wisconsin Steel would use the proceeds to buy one-way airplane tickets to Brazil for its officers, we do not think Chase would be arguing to us that it had extended credit to the company in good faith and therefore had an untouchable priority. Of course in such a case the general creditors should be able to obtain a stay but we do not think their failure to do so would place Chase’s priority beyond the power of judicial correction; otherwise the good faith requirement would be read out of the statute. The present case is less extreme but no different in principle. Just as Chase would not have been a purchaser in good faith if it had bought from Wisconsin Steel property to which it knew the company did not have good title, so it could not be a lender in good faith in extending credit in exchange for a priority that it knew the company could not properly give it since the transaction amounted to taking money out of the pockets of the general creditors to pay lawyers whose claims were not allowable under bankruptcy law at all.
 

 But we must consider whether it may make a difference that the agreement to pay the lawyers was part of a settlement of the three-cornered litigation among the union, the bankrupt, and Chase. Normally if someone was willing to settle his suit against a bankrupt for $77,000, there would be no impropriety in a bank’s lending money (and receiving a special priority) to finance the settlement and thereby enable the bankrupt to disentangle itself from potentially costly litigation, provided that the settlement was a reasonable one. But the origin of the litigation in this case has to be borne in mind. The union was trying to collect its members’ wage claims. Those claims were valid creditors’ claims but the cases cited earlier forbid the creditors’ attorney to collect his fee from the bankrupt. It can make no difference that the attorney has actually filed suit to enforce his client’s claim. If an employee sued his bankrupt employer for $1000 in unpaid wages and the bankrupt settled the suit by paying the employee $900 and the lawyer $100, the $100 for the lawyer would be disallowed. This is not just a fuss over labels. A claim, to be allowed, must be proved. The employee could split his claim with his lawyer if he wanted to but he could not first prove his own claim and then add on the lawyer’s. Unless we are to ignore the explicit recital in the loan agreement, that is this case. Again it is more than a matter of labels. Wisconsin Steel could not grant Chase a special priority without showing that the proceeds of the loan would be used for a proper purpose. The stated purpose of $77,000 of those proceeds was improper. It is immaterial that the expenditure might, for all we know, have been justifiable on some other ground.
 

 As all this must have been as obvious to Chase as it is to us — probably more
 
 *949
 
 so — we do not think that the context (settlement of litigation) in which the loan was made and the special priority received casts enough doubt on the forbidden nature of the transaction to rebut an inference of bad faith — that is, knowledge of improper purpose. Nor, finally, are we persuaded by Chase’s argument that the priority it received on the $77,000 was a
 
 sine qua non
 
 of the entire loan transaction — a transaction beneficial to the bankrupt and hence to the general creditors of the bankrupt as well as to Chase — because the union would not have called off its pickets unless it was given its legal fees and unless the union did call off its pickets and thereby allowed Chase to remove the inventory on which it had a lien Chase would not have made the loan to cover the unpaid wage claims. Chase could have paid the union’s legal fees out of its own pocket if that was what was required to get the inventory out. Instead it claims a right to force the company’s general creditors to pay the union’s legal expenses out of their pockets. That is an improper use of the bankrupt’s estate, to which the general creditors are the residual claimants. The fact that Chase was a defendant in the suit by the union actually strengthens the inference of bad faith. Chase was not a disinterested lender but a settling litigant that saw an opportunity to reduce the cost of the settlement by putting the union’s lawyers ahead of the general creditors of Wisconsin Steel. An extension of credit having such an ulterior purpose is not in good faith within the meaning of section 364(e).
 

 The judgment of the district court is reversed, and the case is remanded with instructions to reverse the order of the bankruptcy judge approving the grant to Chase of a special priority with respect to the $77,000 that it loaned Wisconsin Steel to pay the union for its legal expenses.
 

 SO ORDERED.