In re MONACH CIRCUIT INDUSTRIES, INC. t/a 21st Century Electronics, Inc., Debtor.

In re 21ST CENTURY ELECTRONICS, INC. t/a Monach Circuit Industries, Inc., Debtor.

Bankruptcy Nos. 82–04701G, 82–04702G.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 13, 1984.

Robert Lapowsky, Rubin, Quinn & Moss, Philadelphia, Pa., for unsecured creditors' committee for the debtor corporations.

Jay G. Ochroch, Andrew D. Bershad, Leonard P. Goldberger, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for debtors, Monach Circuit Industries, Inc. t/a 21st Century Electronics, Inc. and 21st Century Electronics, Inc. t/a Monach Circuit Industries, Inc.

Morton Newman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Continental Bank, secured creditor.

Samuel M. Brodsky, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue at bench is whether we should grant a trustee's motion for reconsideration of our order of October 8, 1982, which authorized, without notice or hearing, the incurring of a postpetition debt in exchange for the granting of a lien and priority status superior to adminstrative claims on this postpetition debt as well as on all prepetition debts of the lending creditor. For the reasons stated herein, we will grant the trustee's motion and vacate our order.

The facts of the case are as follows:[1] Monach Circuit Industries, Inc. ("the debtor"), filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code"). At that time the debtor was indebted to Continental Bank ("Continental") in the amount of $501,032.08, which was secured by the debtor's accounts receivable, inventory and proceeds, although the debtor also held other property valued in excess of $100,000.00 which was not the subject of any security interest. One week later, without the dissemination of any notice, the court approved a stipulation between the debtor and Continental which authorized the debtor to obtain postpetition financing from Continental in the amount of $40,000.00 pursuant to 11 U.S.C. § 364(c)(1) and (c)(2). In exchange, the approved stipulation accorded Continental's postpetition and prepetition debts priority over administrative claims and also granted Continental a lien in all of the debtor's collateral. In October of 1983, the creditors' committee was appointed and two months later it filed a motion for reconsideration of our approval of the stipulation. In February of 1984 the case was converted to a chapter 7 proceeding and a trustee was appointed who undertook the prosecution of the motion at issue.

In support of the motion for reconsideration of our approval of the stipulation, the trustee raises several points, the first of which is that the approval of the stipulation was given without notice to creditors. Under the Code, § 364(c), which is quoted *infra* at page 862, provides that the trustee or debtor in possession[2] may obtain credit or incur debt "after notice and a hearing." This phrase is defined by § 102[3] which is reproduced in pertinent

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. Although § 364(c) speaks only of the trustee, 11 U.S.C. § 1107(a) gives the debtor in possession the same powers as a trustee.

3. In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

part below. Continental asserts that notice was afforded the ten largest creditors when they were informed that the debtor sought authority to meet its $40,000.00 payroll obligation. "Thus," asserts Continental, "certainly Debtor's ten largest creditors knew that $40,000.00, *i.e.,* the amount advanced by Continental, was going to be borrowed by Debtor from someone." The mere recitation of Continental's position is tantamount to its refutation. Approval to disburse funds is essentially and conspicuously different from the incurring of debt and notice of either proposed course of conduct does not afford notice of the other.

■ Secondly, Continental contends that there was no time to transmit notice to creditors since the debtor was under the exigency of meeting its payroll. Although mailing notices may not have been practicable, Continental has failed to meet the extraordinarily high showing needed to establish that there was inadequate time for attempting telephonic notice.

■ Thirdly, Continental asserts that notice was not required under § 102 of the Code due to the exigent nature of the matter. We hold otherwise. "Although § 102(1) dispenses with an evidentiary hearing in certain circumstances, nowhere does it expressly annul the requirement of 'notice ... appropriate in the particular circumstances.'" *In Re Sullivan Ford Sales,* 2 B.R. 350, 355 (Bankr.D.Me.1980).

■ Although we have concluded that notice on the incurring of debt was required but not sent, Continental urges us to apply the doctrine of laches to bar the trustee from challenging the propriety of the order at issue. The defense of laches requires unreasonable delay and resulting prejudice. *Gardner v. Panama Railroad Co.,* 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed.2d 31 (1951); *Funket v. Beacon Consumer Discount Co. (In Re Funket),* 27 B.R. 640, 643 (Bankr.M.D.Pa.1982). We

(i) such a hearing is not requested timely by a party in interest; or
(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

conclude that the defense is without merit since any delay in instituting and prosecuting this action was not unreasonable and no prejudice has been shown.

Having addressed the issue of notice, we now face the question of whether the bankruptcy court may authorize the debtor to incur postpetition indebtedness and secure that new indebtedness, as well as preexisting, prepetition indebtedness with the debtor's collateral. The cases refer to this arrangement as cross-collateralization. In addition to cross-collateralization, as stated above the order at issue also accorded Continental a priority over administrative expenses on its prepetition indebtedness. In support of the court's power to approve "cross-collateralization arrangements" of the type at issue Continental points to *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.),* 596 F.2d 1092 (2d Cir.1979), which is a case decided under the Bankruptcy Act of 1898. That court, after strongly noting that approval of the "cross-collateralization agreement" would effectively constitute an unauthorized preference, stated

In order to decide this case we are not obliged, however, to say that under no conceivable circumstances could "cross-collateralization" be authorized. Here it suffices to hold that, despite the absence from § 344 of the specific requirement of notice contained in § 116(2), see note 3 *supra,* a financing scheme so contrary to the spirit of the Bankruptcy Act should not have been granted by an *ex parte* order, where the bankruptcy court relies solely on representations by a debtor in possession that credit essential to the maintenance of operations is not otherwise obtainable.

596 F.2d at 1098. Several bankruptcy courts have construed this holding as providing that "cross-collateralization provisions may not be approved *ex parte,* but

11 U.S.C. § 102(1).

only after notice and a hearing." *In Re General Oil Distributors, Inc.,* 20 B.R. 873, 876 (Bankr.E.D.N.Y.1982); *Borne Chemical Co. v. Lincoln First Commercial Corp. (In Re Borne Chemical Co.),* 9 B.R. 263 (Bankr.D.N.J.1981); *In Re Antico Manufacturing Co.,* 31 B.R. 103 (Bankr.E. D.N.Y.1983); *In Re Flagstaff Foodservice Corp.,* 16 B.R. 132 (Bankr.S.D.N.Y.1981). ·Although the court in *Texlon* carefully limited its holding, these bankruptcy courts concluded that cross-collateralization was allowable.

■ The objections raised in *Texlon* on the preferential nature of cross-collateralization lead us to believe that if that court were faced with the merits of whether the financing arrangement proposed in that case·were authorized by the Code, it would hold that such an arrangement is forbidden. The facts of this case illustrate that objection. Continental granted a postpetition loan of $40,000.00 in new value to the debtor and received in exchange an administrative priority for repayment of this sum and a security interest covering not only that amount but also $501,032.08 in prepetition debts plus an administrative priority for the $501,032.08. Thus, the security interest and the priority received by Continental were in excess of the $40,000.00 in value it gave and as such would constitute a preference under 11 U.S.C. § 547(b).[4]

An additional basis for holding that cross-collateralization is not authorized is found in the language of the Code. Continental asserts that cross-collateralization is allowable under § 364(c), but that section states that:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a

hearing, *may authorize the obtaining of credit or the incurring of debt—*

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien. (Emphasis added).

Although § 364(c)(1), (c)(2) and·(c)(3) allow a court to grant to a creditor a priority over administrative expenses or a lien, the terms of § 364(c) appear to limit the extent of the priority or lien to the amount of the credit obtained or debt incurred *after* court approval. Since the prepetition indebtedness of $501,032.08 was not obtained nor incurred under § 364(c), no relief may be granted under this provision as to that amount.

As its final contention, Continental states that the integrity of the order approving the financing arrangement at issue is shielded by § 364(e)[5] of the Code which affords protection to those who extend credit in good faith where an authorization to incur debt is reversed on appeal. Although this provision is of dubious applicability since the review at bench is by us, which originally approved the order rather than "on appeal," we need not reach the question since we will schedule a hearing on Continental's entitlement to a priority position or a lien for the $40,000.00 previously lent.

In summary, we will vacate our order which approved the financing arrangement.

---

**4.** A security interest granted after the commencement of the ninety day preference period in favor of the holder of an antecedent debt generally constitutes a preference. § 547(b).

**5.** Section 364 provides in pertinent part:
(e) The reversal or modification *on appeal* of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not

affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal. (Emphasis added).
11 U.S.C. 364(e).