FLETCHER, Circuit Judge:
Appellants, creditors in consolidated bankruptcy cases, appeal the district court’s affirmance of a bankruptcy court’s authorization without creditor approval of a financing arrangement that includes a cross-collateralization provision. We dismiss the appeal as moot under 11 U.S.C. § 364(e).
BACKGROUND
Robert Stirling, and three of his wholly-owned corporations engaged in apple growing and marketing (the debtors), filed separate petitions for relief under Chapter 11 of the Bankruptcy Code on June 10 and June 14, 1983. At issue is an interim financing agreement providing that Central Washington Bank (CWB) would advance $450,000 and an optional additional $325,000 to provide funds to the debtors to produce crops in 1983, and to preserve the horticultural quality of the debtor’s orchards. In exchange, CWB would receive a security interest ahead of other creditors in the 1983 crop as collateral for the loan. The first lien security' interest would secure CWB’s pre-petition loan of $450,000 as well as post-petition advances.[1]
CWB’s pre-petition loan was made in 1982 and extended in 1983. The borrower was Mad River Fruit Company, Inc.,[2] a corporation wholly-owned by Stirling. About March 1, 1983, the debtors executed promissory notes to guarantee the debt about March 1, 1983. They granted a security interest in crops to secure the notes, and financing statements were filed on April 4,1983. Soon thereafter, when priority disputes arose, the debtors began discussing other financing arrangements with CWB, as well as two other potential lenders, Bank of California, and Dovex. Several arrangements were rejected by the debtors or withdrawn by the potential lenders. The arrangement at issue, which required the debtors to file Chapter 11 proceedings to clarify CWB’s rights, was then proposed.
The bankruptcy court held three hearings to consider the plan. Other creditors, the appellants here, objected to the crosscollateralization clause.[3] At the first hearing, Stirling testified that without the loan, his 1983 crops would fail and he could lose his orchards. He stated further that CWB would provide financing only if the contract included a cross-collateralization clause, and that he could not otherwise secure financing. He acknowledged that he had refused Bank of California’s offers, but these offers were not renewed after his testimony, despite the bankruptcy judge’s call for alternative arrangements. No other arrangements were suggested by the creditors. After a tentative oral ruling on June 15,1983, and the court’s consideration of a Motion for Reconsideration, the bankruptcy court issued its final authorization on July 14, 1983.
CWB began its post-petition financing before final authorization. It paid the debtors $48,000 before the first hearing, and an additional $200,000 before July 14. It ultimately lent the debtors a total of $450,000 post-petition.
Bank of California filed a motion for a stay pending appeal on July 14, 1983. The bankruptcy court denied the motion that day, but reversed itself and ordered a stay on August 19, 1983. However, a notice of appeal to the district court had been filed before August 19. The district court found that the bankruptcy court properly exer *1487 cised its authority in authorizing the loan. This appeal followed.
JURISDICTION
Jurisdiction is conferred by 28 U.S.C. § 158(d) if the order from which the appeal is taken is final. We apply a flexible standard of finality in reviewing orders in bankruptcy cases. See In re Exennium, Inc., 715 F.2d 1401, 1402-03 (9th Cir.1983) (bankruptcy court order for sale of four real estate leases deemed final). Under In re Mason, 709 F.2d 1313, 1317 (9th Cir. 1983), an order is final if it is distinct and conclusive of the substantive rights of individuals. This case considers whether a bankruptcy court may authorize a lender to contract with a debtor to subordinate the claims of other creditors to property of the debtor. Because the order disposes of property rights of individuals, it is final.
TIMELINESS OF APPEAL
The district court’s order was entered on January 30, 1986, and notices of appeal were filed on March 26, 28, and 31, 1986. Under Fed.R.App.P. 4(a)(1), a notice of appeal is timely ordinarily if filed within 30 days, or within 60 days of a court’s final judgment if the United States is a party to the action. The Small Business Administration was a party to one of the appeals. The parties assume that if their actions were consolidated, the 60-day requirement is appropriate because the United States is a party to one of the actions. Because the timeliness of filing a notice of appeal is jurisdictional, the panel has an obligation to raise sua sponte the issue of whether consolidation of cases including one in which the United States is a party permits parties in the other cases to file an appeal within 60 days. In addition, a question arose concerning whether the actions were actually consolidated.
The Federal Circuit has held that for purposes of Fed.R.App.P. 4(a)(3), which provides that any party to an action may file an appeal within 14 days of a filing by another party, the 14-day time limit applies to parties in any of the cases within the consolidated action. Jackson Jordan, Inc. v. Plasser American Corp., 725 F.2d 1373 (Fed.Cir.1984). Under Jackson Jordan, the appeals were timely filed under either Rule 4(a)(1) or Rule 4(a)(3). Other courts have held that a trial court’s decision reaching the merits of only some of the cases within a consolidated action was not final, and therefore not appealable absent certification. See, e.g., Ivanov-McPhee v. Washington National Insur. Co., 719 F.2d 927 (7th Cir.1983); but see Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 735, 96 S.Ct. 1854, 1880, 48 L.Ed.2d 301 (1976) (Marshall, J., dissenting); McKenzie v. United States, 678 F.2d 571, 574 (5th Cir.1982). We therefore hold that the notices of appeal were timely filed if the cases were consolidated.
The district court did not formally consolidate the cases, but in an order dated Dec. 8, 1983, referred to them as “these consolidated cases.” An order issued on May 15, 1986, acknowledged that the court and the parties always treated the cases as consolidated. The district court filed a single opinion resolving the merits of the cases. Because consolidation is within the broad discretion of the district court, In re Air Crash Disaster at Florida Everglades, 549 F.2d 1006, 1013-14 (5th Cir.1977), the cases involved common issues of law as well as fact, Fed.R.Civ.P. 42(a), and trial courts may consolidate cases sua sponte, 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2383 at n. 37, we find that the cases were consolidated and the notices of appeal timely filed.
MOOTNESS
CWB argues that appellants’ claim is moot under 11 U.S.C. § 364(e).[4] An appellate court may not reverse the authorization to obtain credit or incur debts under section 364 if the authorization was not *1488 stayed pending appeal unless the lender did not act in good faith. 11 U.S.C. § 364(e).[5] Appellant maintains that (1) section 364(e) does not apply to a lien to secure a pre-petition loan, and even if section 364(e) does apply, then (2) the bankruptcy court did stay its authorization, and (3) CWB acted in bad faith. These defenses are not meritorious.
In interpreting a statute, we look first to the language itself. Landreth Timber Company v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). Under the plain language of the statute, section 364(e) applies if the cross-collateral lien is within the purview of section 364. Section 364 authorizes a bankruptcy court to permit the use of a variety of financing devices. Cross-collateralization clauses are not expressly included in the list. The plain language does not indicate whether Congress intended to include a device that permits a creditor to promote his pre-petition debt over other debt of equal priority.
We do find guidance, however, from Congress’s overall policy in passing section 364. See United States v. American Trucking Associations, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) (primary purpose in construing a statute is to give effect to Congressional intent). Section 364 was designed to provide a debt- or a means to obtain credit after filing bankruptcy. As such, cross-collateralization clauses appear to be covered by section 364 and in turn subject to section 364(e).
Appellants argue, however, that post-petition liens on pre-petition debt were not the sort Congress intended to protect through section 364(e) and that therefore we should look beyond the general purpose of section 364. They cite Matter of EDC Holding Company, 676 F.2d 945, 947 (7th Cir.1982), which stated that the purpose of section 364(e) was to overcome a good faith lender’s reluctance to extend financing in a bankruptcy context by permitting reliance on a bankruptcy judge’s authorization. Cf. Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1424 (9th Cir.1985) (noting “long-standing bankruptcy law favoring finality of judgments as to the automatic stay”).
We disagree with appellants’ conclusion that Congressional policy to foster reliance is not furthered by considering crosscollateralization clauses to be among the financing devices subject to section 364(e). A lender may be willing to extend credit if the arrangement includes a cross-collateralization clause, and a chance for greater profit (or, put differently, to reduce earlier losses), but would withhold credit if the clause could be overturned on appeal. Nor are we satisfied with appellants’ argument that a lender has not “relied” on a bankruptcy court’s authorization if the lender has recouped fully its post-petition outlay. Although limiting application of section 364(e) to cross-collateralization situations in which, unlike here, a lender’s post-petition funds are unpaid would protect lenders from the risk of loss associated in particular with investing in bankrupt companies, the limitation fails to take account of lenders’ reliance on the possibility of profit. Without such an opportunity, lenders may choose to invest in other enterprises. Congressional intent of fostering private investment in failing companies by promoting reliance on a bankruptcy court’s authorization would be defeated. We therefore conclude that section 364(e) is meant to protect the lender by preventing reversal of a cross-collateralization clause unless a stay is obtained pending appeal.[6] See In re *1489 Ellingsen MacLean Oil Co., 65 B.R. 358 (W.D.Mich.1986) (applying section 364(e) to claim that cross-collateralization clause was illegal).[7]
If a stay was issued “pending appeal,” the claim is not moot. The bankruptcy court initially denied the creditors’ motion for a stay, but granted a stay on Aug. 19, 1983, after an appeal to the district court was filed. CWB transferred funds under the loan agreement in the interim.
No cases consider the timing requirement under section 364(e), nor under section 363(m), the provision after which section 364(e) was modeled. The policies behind section 364(e), however, indicate that a claim is moot as soon as a lender has relied on the authorization. The doctrine that failure to obtain a stay pending appeal renders a claim moot developed outside the Bankruptcy Rules. Algeran, 759 F.2d at 1424. It reflects the general notion that an appeal is moot when a change in circumstances prevents effective relief and the specific notion in bankruptcy law that there is a need for finality in orders regarding stays. Id. To permit a court to impose a stay after a creditor has lent money to a debtor would intrude on a reorganization process already underway[8] and would interfere with the lender’s ability to plan for its outlay of funds.[9]
The bankruptcy court’s order imposing a stay should not be binding for a second reason. The order was issued after appellants filed an appeal of the cross-col-lateralization authorization in the district court. Generally a bankruptcy court has wide latitude to reconsider and vacate its own decisions. In re Bialac, 694 F.2d 625, 627 (9th Cir.1982). A pending appeal, however, divests a bankruptcy court of jurisdiction. Id.; In re Combined Metals Reduction Co., 557 F.2d 179, 200-01 (9th Cir. 1977). Because the bankruptcy court had no jurisdiction to stay its order and because no other court issued a stay, the bankruptcy court’s original refusal to issue a stay binds the parties. Therefore, if CWB acted in “good faith,” the issue is moot under section 364(e).
The Bankruptcy Code does not provide a definition of good faith. In re Suchy, 786 F.2d 900, 902 (9th Cir.1985) (applying former Bankruptcy Rule 805 from which 11 U.S.C. § 363(m) is derived). Nonetheless, we have held in the context of foreclosure sales that to determine good faith we look to the integrity of an actor’s conduct during the proceedings. Id. (citing Exennium, 715 F.2d at 1404-05). Misconduct defeating good faith includes “ ‘fraud, collusion ..., or an attempt to take grossly unfair advantage of other[s].’ ” Id. (quoting Prichard v. Sherwood & Roberts, Inc. (In re Kings Inn, Ltd.), 37 B.R. 239, 243 (Bankr. 9th Cir.1984) (quoting In re Rock Industries Machinery Cory., 572 F.2d 1195, 1198 (7th Cir.1978))); see also In re Magwood, 785 F.2d 1077, 1081 n. 6 (D.C. Cir.1986). A creditor fails to act in good faith if it acts for an improper purpose. Matter of EDC Holding Co., 676 F.2d 945, 948 (7th Cir.1982). Knowledge of the illegality of a transaction also defeats good faith. Matter of Chicago, Milwaukee, St. Paul and Pacific R.R. Co., 799 F.2d 317, 330 (7th Cir.1986), cert, denied, — U.S. -, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987).
*1490 Appellants assert as a general matter that CWB failed to act in good faith because it intended to secure an otherwise unsecured pre-petition claim, and because securing such a claim is improper under the Bankruptcy Code.[10] Preliminarily, we note that, as CWB correctly maintains, courts have drawn opposite conclusions in determining whether cross-collateralization clauses are authorized under the Code. Compare, e.g., In re Roblin Indus., Inc., 52 B.R. 241 (Bankr.W.D.N.Y.1985); In re Vanguard Diversified, Inc., 31 B.R. 364 (Bankr.E.D.N.Y.1983) (finding authorization in particular circumstances), with In re Monach Circuit Industries, Inc., 41 B.R. 859 (Bankr.E.D.Pa.1984) (cross-collateralization improper where it amounted to an illegal preference under section 547 and because section 364 does not authorize such arrangements). See also Texlon, 596 F.2d 1092 (suggesting in lengthy dictum that cross-collateralization clauses might be illegal per se).
Appellants advance two specific arguments in support of their assertion that CWB did not act in good faith. First, appellants claim that the cross-collateralization clause violates a fundamental tenet of bankruptcy law that like creditors must be treated alike. This argument is simply a restatement of their general assertion that cross-collateralization clauses are illegal per se. It is flawed because the “fundamental tenet” conflicts with another “fundamental tenet” — rehabilitation of debtors, which may supersede the policy of equal treatment. Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred pri- or to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts. See Ordin, Case Comment, In re Texlon Corporation, 596 F.M 1092 (2d Cir.1979): Finality of Order of Bankruptcy Court, 54 Amer.Bankr.L.J. 173, 177 (1980). In addition, Congress provided in section 364(d) that pre-petition debts, even secured interests, may be subordinated by post-petition obligations. Although this more traditional application of section 364(d) does not involve disparate treatment of creditors, it illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation.
Cross-collateralization clauses may provide the only means for saving a failing company. As noted above, a lender may be willing to take the risk of advancing funds to a debtor only if the gain derived from cross-collateralization is available. If the lender is the sole lender willing to finance the debtor, a cross-collateralization clause may mean the difference between an ongoing enterprise and a company in liquidation.
Although we recognize the importance of the goal of treating creditors equally and emphasize that cross-collateralization clauses must only be employed, if at all, after careful review, we do not find the case law so dispositive that we conclusively can state that CWB acted in bad faith by lending with the purpose of securing a pre-petition loan. We do not think that the good faith requirement was intended to deny protection to lenders who can advance reasonable legal arguments in support of their actions, even if their arguments are ultimately deemed unpersuasive. See Chicago, 799 F.2d at 330; EDC Holding, 676 F.2d at 947 (“We assume the statute was intended to protect not the lender who seeks to take advantage of a lapse in oversight by the bankruptcy judge but the lender who believes his priority is valid but cannot be certain that it is, because of objections that might be upheld on appeal.”). Accordingly, we conclude that CWB did not act in bad faith as a matter of law simply because some courts have held cross-collateralization clauses to be illegal per se.
*1491 Appellants advance the more limited argument that CWB acted in bad faith by entering into the loan agreement despite the fact that other creditors withheld consent. The statute does not support appellants’ position. Section 364 mandates “notice and hearing,” but not consent. Requiring creditor consent would divest the bankruptcy judge of his or her authority. Not only does section 364 permit a judge to authorize secured loans in appropriate circumstances, but section 105(a) provides for a broad exercise of authority by a bankruptcy judge to further the provisions of the Bankruptcy Code. Bohm, The Legal Justification for the Proper Use of Cross-Collateralization Clauses in Chapter 11 Bankruptcy Cases 59 Amer.Bankr.L.J. 289, 295-96 (1985). The authority is best lodged in the bankruptcy judge — a creditor’s consent would be based on self-interest, whereas a judge’s authorization after appropriate notice and hearing, would represent a reasoned judgment based on the best interest of all parties involved. Although in some of the cases cited by appellants, a court authorized a cross-collateralization clause upon creditor consent, other cases do not require such consent. See, e.g., Vanguard, 31 B.R. at 366; see also Texlon, 596 F.2d at 1098-99 (calling for a hearing, but not requiring consent). We therefore conclude that CWB acted in good faith.
CONCLUSION
We dismiss the appeal as moot because our consideration of the merits is barred by 11 U.S.C. § 364(e).

. Post-petition securing of previously unsecured pre-petition loans is referred to as cross-collateralization.

. The debtors, in their brief, note that a substantial amount of the financing was intended to benefit them.

. These creditors appear to have a mixture of secured and unsecured claims.

. The district court’s opinion does not address the section 364(e) issue, but we can affirm the district court’s decision on any ground supporting it. Dandridge v. Williams, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970). Further, because mootness defeats jurisdiction, we must raise the issue sua sponte.

. Subsection 364(e):
The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

. Our conclusion that cross-collateralization clauses are "authorized" under section 364 is limited to the context of section 364(e) mootness, and is not intended to prevent a future panel from holding, if it so determines, that cross-collateralization is illegal per se. Because the bankruptcy judge thought that cross-collater *1489 alization was legal and entered an order to that effect upon which the creditor relied, we conclude that the creditor should receive the protection of section 364(e) in this case.

. The court in In re Texlon, 596 F.2d 1092 (2d Cir.1979), decided that the claims were not moot even though a stay had not issued. However, section 364(e) was adopted after Texlon was decided. Its predecessor, Bankruptcy Rule 805, applied less clearly to liens granted in a financing order. In addition, the court never considered the Rule’s possible application. Bohm, The Legal Justification for the Proper Use of Cross-Collateralization Clauses in Chapter 11 Bankruptcy Cases 59 Amer.Bankr.L.J. 289, 308 & n. 67 (1985).

. It is unclear from the record how far the reorganization process has gone. Nonetheless, section 364(e) represents a Congressional determination that section 364 transactions cannot be undone effectively without a stay.

. Appellants argue that CWB did not rely on the authorization because CWB extended the credit for which this collateral is security pre-petition. As discussed above, appellants’ argument fails to take account of CWB’s reliance on the authorization in extending credit.

. Normally determinations of good faith are issues of fact, best resolved by the bankruptcy court. Appellants’ arguments in this case, however, are founded on an issue of law — whether courts have conclusively held that cross-collateralization clauses are illegal per se. Accordingly, we may resolve the issue in this appeal.