**In re VANGUARD DIVERSIFIED, INC., a/k/a Vanguard Business Furniture, Debtor.**

**Bankruptcy No. 883–31219–18.**

United States Bankruptcy Court, E.D. New York.

June 28, 1983.

Louis P. Rosenberg, Brooklyn, N.Y., Friend, Dorfman & Marks, New York City, for debtor.

Judge Joel Lewittes, Parker, Chapin, Flattau & Klimpl, Marcy Sharon Cohen, New York City, for Bank Leumi.

### DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Debtor-in-possession, Vanguard Diversified, Inc., (hereinafter "Vanguard") seeks the court's approval of a certain proposed financing order, which provides *inter alia* for the cross-collateralization of its present and future indebtedness to Bank Leumi Trust Company of New York (hereinafter "Bank Leumi"). After a hearing on notice to Vanguard's twenty largest creditors, the court reserved decision.

FACTUAL CONTEXT

On June 21, 1983, Vanguard filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and has been continued in the management and possession of its property as debtor-in-possession pursuant to section 1108 of the Bankruptcy Code. Vanguard is engaged in the business of manufacturing steel office furniture.

Since July 1982, Vanguard has financed its operations with Bank Leumi. At present, Vanguard has outstanding indebtedness to Bank Leumi in the approximate sum of $5,000,000. This indebtedness is secured by a first lien held by Bank Leumi on all of Vanguard's personal property including without limitation all accounts, general intangibles, goods, instruments, documents and chattel paper, and a lien on certain motor vehicles owned by Vanguard. Bank Leumi also holds certain fourth-level subordinate mortgages in the aggregate amount of $2,299,500, covering Vanguard's premises located at 10 Java Street, Brooklyn, New York.

At the time Vanguard filed its Chapter 11 petition, it had no funds with which to purchase inventory or to pay salaries. In order to prevent a disruption of Vanguard's business operations, counsel for Vanguard and Bank Leumi presented a proposed interim financing order (hereinafter "Interim Order") to the court on June 21, 1983. Upon the supporting affidavits and representations of counsel, the Interim Order was duly signed and entered on June 21, 1983. The order provided that pending a hearing to be held on June 24, 1983, Bank Leumi was authorized to advance sums not exceeding $225,000 at any one time outstanding, with the advances to be secured by a lien on certain described assets of the debtor and debtor-in-possession, and by a superpriority status pursuant to 11 U.S.C.

§ 364(c). Contrary to the intimations of counsel, the order contained, in rather innocuous terms, a cross-collateralization provision granting Bank Leumi certain security interests and a superpriority status in the *pre-petition* claims of Bank Leumi against the debtor.

On June 24, 1983, a hearing was held to consider the approval and implementation of the proposed financing order (hereinafter "Financing Order"). The Financing Order provides that Bank Leumi will extend to Vanguard a $5,000,000 revolving line of credit at interest of 1.5% over prime in exchange for the following security: (1) A first lien on all pre- and post-petition Security (as defined in Schedule A of the Security Agreement) to secure payment of all pre- and post-petition debts of Vanguard to Bank Leumi; (2) Subordinate mortgages on Vanguard's real property previously granted to Bank Leumi in the approximate amount of $2,299,500, to secure payment of all pre- and post-petition debts of Vanguard to Bank Leumi; (3) A super-priority pursuant to 11 U.S.C. § 364(c) for all pre- and post-petition debts of Vanguard to Bank Leumi; and (4) A certificate of indebtedness which shall: (i) be a first lien, subject to existing nonavoidable liens, on all real and personal property of the debtor and debtor-in-possession together with all after-acquired property and proceeds, and (ii) have a superpriority over any administrative expenses and subsequent liens.

## DISCUSSION

Under the doctrine of *In re Texlon Corp.,* 596 F.2d 1092 (2d Cir.1979), cross-collateralization is a disfavored means of financing which may only be authorized after its necessity has been established at a hearing held on notice to creditors. *In re General Oil Distributors, Inc.,* 20 B.R. 873 (Bkrtcy.E. D.N.Y.1982); *see In re Borne Chemical Company,* 9 B.R. 263 (Bkrtcy.D.N.J.1981); *In re Flagstaff Food-Service Corp.,* 14 B.R. 462 (Bkrtcy.S.D.N.Y.1981). Since cross-collateralization accords preferential treatment to the claims of the financing party, *In re Texlon Corp., supra* at 1097, it is a device that "may be utilized as a last resort only when the debtor is otherwise unable to obtain needed financing on acceptable terms." Weintraub & Resnick, *Cross-Collateralization of Prepetition Indebtedness as an Inducement for Postpetition Financing: A Euphemism Comes of Age,* 14 U.C. C.L.J. 86, 90 (1981) (hereinafter "Weintraub & Resnick").

In seeking to grant cross-collateralization, the debtor-in-possession must demonstrate that: (1) Absent the proposed financing, its business operations will not survive, *see* Weintraub & Resnick, *supra* at 90–91; (2) It is unable to obtain alternative financing on acceptable terms, Weintraub & Resnick, *supra* at 90, *see In re Texlon, supra* at 1098; (3) The proposed lender will not accede to less preferential terms; and (4) The proposed financing is in the best interests of the general creditor body, *see In re Texlon Corp., supra* at 1098–99.

In support of its first element of proof, Vanguard's co-counsel, Louis Rosenberg and Solomon Friend, testified under oath that the debtor-in-possession is out of funds, and will cease to operate immediately if no financing is forthcoming. Tr. 6/24/83, at 17–18. Without financing, Vanguard will be unable to purchase inventory on a C.O.D. basis and to pay the salaries of its employees. *Id.* at 9, 17.

Vanguard further demonstrated at the hearing that attempts to secure other means of financing proved fruitless. First, the company retained a financial consulting firm, Lewis R. Eisner & Co., for the purpose of obtaining alternative financing and/or selling the company. Tr. 6/24/83, at 16. The efforts of the Eisner Company continued up to the filing of the debtor's bankruptcy petition, but were unsuccessful. *Id.* Second, Vanguard's counsel, Louis Rosenberg, conferred with several factors, including Gibralter Factor. *Id.* at 20. However, since virtually all of Vanguard's assets were encumbered, *id.* at 5, the factors were unwilling to finance the debtor-in-possession. *Id.* at 20.

In regard to the third element of proof, Marcy Sharon Cohen, Assistant Vice Presi-

dent and Associate Legal Counsel of Bank Leumi, testified that the Bank would not finance Vanguard's operations unless it received the protection afforded by cross-collateralization. *Id.* at 29. Ms. Cohen explained that without cross-collateralization, any future advances by Bank Leumi would be secured only by debtor-in-possession receivables, and if the debtor-in-possession were thereafter forced to liquidate its assets, the receivables would be insufficient to cover the advances. *Id.* at 24–26. Ms. Cohen stated that it was her experience that receivables are in large part uncollectable in liquidation, and alluded to the fact that when Vanguard temporarily ceased operations in December, 1982, a very small percentage of receivables were being collected. *Id.* at 24–25.

The second reason advanced by Ms. Cohen for cross-collateralization is that Bank Leumi considers itself undersecured on its pre-petition loans to Vanguard. *Id.* at 26–29. Approximately $5,000,000 in loans is outstanding to Bank Leumi. *Id.* at 26. The Bank's collateral for these loans includes certain fourth-level subordinate mortgages on Vanguard's real property. The property was appraised a year ago at a going-concern value of $3,300,000. *Id.* at 27. After allowing for the senior mortgages, the remaining equity to which the Bank's lien would attach amounts to no more than $2,200,000. *Id.* Ms. Cohen was of the opinion that even the $2,200,000 figure is inflated since it is rare that one actually realizes the appraised value of property in foreclosure. *Id.* Indeed, were the debtor's reorganization to fail, it is doubtful that its factory at 10 Java Street, Brooklyn, New York, could be sold in foreclosure for the appraised value. *See id.* at 8.

According to Ms. Cohen, Vanguard's remaining assets consist of ,accounts receivable ($1,500,000 going concern value; substantially less in liquidation), equipment ($750,000), and inventory ($1,200,000 going concern value; $400,000 in liquidation). Thus, according to Ms. Cohen's testimony, the assets in which Bank Leumi has an interest have an aggregate value of approximately $5,650,000 if Vanguard continues to operate as a going concern, and substantially less in liquidation. Therefore Bank Leumi's assumption that it is undersecured would not appear to be unreasonable.

In light of the foregoing, the court finds that Vanguard has met its burden of proof. Absent continued financing from Bank Leumi, Vanguard would in all likelihood cease operating and be forced to liquidate. In such event, the unsecured creditors would not receive any distribution from the debtor's estate. Under the circumstances, and in the absence of any opposition from the creditors, there appears to be no reason why the proposed financing order should not be signed. *See generally* Ordin, *In re Texlon Corporation: Finality of Order of Bankruptcy Court,* 54 Am.Bankr.L.J. 173 (1980).

Accordingly, Vanguard's application is in all respects approved. Upon request of counsel, the Financing Order will be certified to the District Court for appropriate disposition.