### In re ANTICO MANUFACTURING CO., INC., Debtor.

**Bankruptcy No. 883–31133–18.**

United States Bankruptcy Court, E.D. New York.

June 30, 1983.

**104**

Grutman, Miller, Greenspoon & Hendler, New York City, for debtor.

Harvey L. Kaminski, Englewood Cliffs, N.J., for Armco Commercial.

Sherman & Citron, P.C., New York City, for creditors.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Debtor-in-possession, Antico Manufacturing Co., Inc. (hereinafter "Antico"), seeks the court's approval of a certain proposed financing order, which provides *inter alia* for the cross-collateralization of its future indebtedness to Armco Commercial (hereinafter "Armco"). After a hearing on notice to all of Antico's creditors, the court reserved decision.

### FACTUAL CONTEXT

On June 9, 1983, Antico filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and has been continued in the management and possession of its property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Antico is engaged in the business of manufacturing automotive and industrial plastic molded products.

For a number of years prior to the filing of its Chapter 11 petition, Antico has been financing its operations through Armco. At present, Antico has outstanding indebtedness to Armco in the approximate sum of $800,000. This indebtedness is secured by a lien on virtually all of Antico's personal property, including accounts receivable, inventory, machinery and equipment.

At the time Antico filed its Chapter 11 petition, its operations had been shut down due to a lack of funds. In order to revive Antico's operations as a going concern, counsel for Antico and Armco presented a proposed interim financing order (hereinafter "Interim Order") to the court on June 9, 1983 on notice to Antico's ten largest creditors. The Interim Order provided *inter alia* that at all times prior to June 30, 1983, Antico was authorized to borrow sums aggregating to not more than $200,000, with such advances to be secured by a lien on certain assets of the debtor and debtor-in-possession, and by a superpriority status pursuant to 11 U.S.C. § 364(c). The Interim Order was duly signed and entered in this court on June 9, 1983, and was on that date certified to and signed by District Judge Francis X. Altimari.

On June 28, 1983, a hearing on notice to all creditors was held to consider a motion of Antico for approval of a permanent financing order (hereinafter "Financing Order"). The Financing Order provides that Armco will extend to Antico sums, without fixed limitation, up to 85% of eligible accounts receivable plus advances for inventory purchases, at an interest rate of 5% over prime. Armco has agreed to an indefinite moratorium on principal payments during the pendency of Antico's bankruptcy case, and will only seek to collect the interest thereon. Tr. 6/28/83, at 19. In return, Armco is to primarily receive: (1) a first lien, subject only to existing nonavoidable liens, on all post-petition inventory, accounts receivable, equipment, general intangibles and other goods now existing or hereafter arising, securing all post-petition advances by Armco; (2) a first lien on Antico's equity, if any, in its pre-petition accounts receivable and inventory, securing all post-petition advances by Armco; and (3) superpriority pursuant to 11 U.S.C. § 364(c) over any present or future administrative expenses.

## DISCUSSION

This court has previously held, "[u]nder the doctrine of *In re Texlon Corp.,* 596 F.2d 1092 (2d Cir.1979), cross-collateralization is a disfavored means of financing which may only be authorized after its necessity has been established at a hearing held on notice to creditors." *In re Vanguard Diversified,* 31 B.R. 364 at 366 (Bkrtcy.E.D.N.Y.1983). At the same time, it must be recognized that there is a marked distinction between two species of cross-collateralization. On one hand, the debtor-in-possession may attempt in a financing order to grant the lender a lien or interest in *post-petition* collateral to secure an outstanding *pre-petition* debt. This is the variety of cross-collateralization which the Second Circuit found in *Texlon* to be in such derogation of the rights of other creditors that it is "contrary to the spirit of the Bankruptcy Act." *In re Texlon Corp., supra* at 1098. In contrast, where the debtor-in-possession seeks to grant the lender a lien or interest in *pre-petition* collateral to secure *post-petition* indebtedness, the arrangement would appear to be less objectionable. In this latter situation, the lender is not improving the position of an existing claim, but is merely exacting as security for future advances a lien or interest in what may well be the only tangible assets the debtor can offer.

In the present case, Antico is seeking authorization to grant non-*Texlon* type collateralization. since, as will be discussed below, Antico has met the comprehensive burden of proof delineated by this court in *Vanguard, supra* at 366, the court need not determine whether the debtor's burden is at all diminished in the non-*Texlon* situation.

In *Vanguard,* the court delineated the elements of the debtor's proof as follows:

In seeking to grant cross-collateralization, the debtor-in-possession must demonstrate that: (1) Absent the proposed financing, its business operations will not survive; (2) It is unable to obtain alternative financing on acceptable terms; (3) The proposed lender will not accede to less preferential terms; and (4) The proposed financing is in the best interests of the general creditor body.

*Id* at 366 (citations omitted).

In support of the first element of proof, it was established at trial that without the proposed financing by Armco, the debtor-in-possession will soon be out of funds, and will be forced to shut down. *See* Tr. 6/28/83, at 13–14, 18. Without financing, Antico will be unable to purchase inventory and to pay the salaries of its employees.

Antico further demonstrated at the hearing that its attempts to secure other means of financing were unsuccessful. *Id.* at 11–12. Sheldon R. Friedman, President of Antico, testified that his company was unable to obtain unsecured or non-superpriority financing from other sources, such as Citibank and New York City Executive Volunteer Corps. *Id.* at 11. In addition, Antico contacted a number of companies in regard to the possible purchase of an equity interest in Antico, but was refused by all. *Id* at 11–12.

In regard to the third element of proof, Richard J. Tucker, President of Armco, testified that Armco would not finance Antico's operations unless it received the protection afforded by cross-collateralization. Tr. 6/28/83, at 18–19. Mr. Tucker and Mr. Friedman both testified that the post-petition collateral, to wit: receivables and inventory are an insufficient base of security for loans of the magnitude in question. *Id* at 10–11, 18–19. Mr. Tucker explained that in order to reach the break-even point, Antico must generate sales of $65,000 per week, and that in an effort to increase the volume of sales, has made daily requests for funds with which to purchase inventory. Thus, Armco finds itself in a vicious cycle of having to increase credit, secured only by inventory and purchase orders, which are somewhat speculative, in order to create receivables. *Id.* at 18–19.

Regarding the final element of proof, Antico has adequately shown that the proposed financing order is in the best interests of its creditors. While having certain reservations about the language of the proposed order,[1] Robert Kolodney, the attorney for the few creditors who were represented at the hearing[2] conceded that "this situation is a classic case of probably getting nothing on liquidation if we don't have the financing." Tr. 6/28/83, at 14. Under the circumstances, and in the absence of any opposition from the creditors, there appears to be no reason why the proposed financing order should not be signed.

Accordingly, Antico's application is in all respects granted. Upon request of counsel, the Financing Order will be certified to the District Court for appropriate disposition.

---

1. Mr. Kolodney expressed two primary concerns regarding the language of the proposed Financing Order. First, the fourth decretal paragraph on the third page provides that the debtor "is authorized to make payments of interest to Armco Commercial from the post-Petition Assets on the outstanding balance of pre-Petition and post-Petition indebtedness." While this provision appears on the surface to constitute *Texlon*-type cross-collateralization, upon closer inspection it does not purport to grant Armco any lien or interest in post-petition assets to secure payment of pre-petition indebtedness. Rather, the provision is strictly permissive in allowing the debtor-in-possession to pay the pre-petition interest. Indeed, Armco's counsel expressly represented to the court that Armco was not seeking *Texlon*-type cross collateralization. Therefore, the court hereby finds that the paragraph in question does not afford Armco any rights to the post-petition assets of the debtor-in-possession.

The second concern expressed by Mr. Kolodney is that the final decretal paragraph on page 7 of the Financing Order, which denies the debtor the right to recover from property subject to Armco's lien any costs and expenses of preservation or disposition of such property without the written consent of Armco, contravenes 11 U.S.C. § 506(c). While it is true that section 506(c) ordinarily affords a debtor-in-possession the right to recoup the costs of preserving or disposing of collateral from the collateral itself, Mr. Tucker testified that Armco would not continue financing Armco without such a provision. Tr. 6/28/83, at 19. Certainly, the paragraph in question is not so detrimental or improper as to jeopardize the loss of the entire financing package.

2. Mr. Kolodney stated that his firm did not formally represent the Creditors' Committee since no quorum was present at the meeting of creditors that had been called immediately prior to the hearing. Thus, Mr. Kolodney appeared only on behalf of the three creditors who attended the prior meeting.