In re ELLINGSEN MacLEAN OIL CO., INC., and related cases, Debtor.

UNSECURED CREDITORS' COMMITTEE; Mobil Oil Corporation, Plaintiffs–Appellants,

v.

FIRST NATIONAL BANK & TRUST COMPANY OF ESCANABA, and the Northern Trust Company, Defendants–Appellees.

No. 86–1452.

United States Court of Appeals, Sixth Circuit.

Argued April 24, 1987.

Decided Nov. 30, 1987.

Rehearing and Rehearing En Banc Denied Jan. 15, 1988.

**600**

Jonathan F. Thoits (argued) Day, Sawdey, Flaggert & Porter, Timothy J. Curtin, Varnum, Riddering, Schmidt, and Howlett, Grand Rapids, Mich., for plaintiffs-appellants.

Thomas L. Butch, Escanaba, Mich., David F. Heroy (argued), Barbara A. Zahs, Gardner, Carton & Douglas, Chicago, Ill., for defendants-appellees.

Before MERRITT, WELLFORD and NELSON, Circuit Judges.

WELLFORD, Circuit Judge.

This case presents interesting and difficult questions about the application of section 364 of the Bankruptcy Code. The case arises from a consolidated bankruptcy proceeding involving thirteen related debtors, among which Ellingsen MacLean Oil Company is the largest. The debtors are oil companies who provide, among other things, home heating oil to homes in the Marquette, Michigan area. These debtors were all operating under a Chapter 11 bankruptcy reorganization at the time the order at issue was entered.

On March 31, 1984, the bankruptcy court entered an Agreed Order authorizing the various debtors to use their assets, including cash collateral, which were subject to prepetition security interests held by appellees First National Bank and Trust Company of Escanaba and the Northern Trust Company (the Banks), the debtors' principal secured creditors. The Order also allowed the debtors to borrow an additional $500,000 from the Banks. As an incentive to the Banks to extend added credit, the debtors granted the Banks first and senior replacement liens on all of the debtors' assets pursuant to Bankruptcy Code section 364,[1] and the debtors agreed to make periodic payments to the Banks as permitted under other sections of the Code.

The debtors failed to make the agreed periodic payments, and the Banks filed a motion for relief from the automatic bankruptcy stay then in effect. In response, the debtors filed a petition for authority to settle the stay litigation, to amend the Agreed Order of March 31, 1984, and to obtain new credit. The immediate need for new credit was to purchase needed home heating oil for delivery to approximately 1200 to 1500 customers during Christmas week.

The bankruptcy court held an emergency telephonic hearing. The debtors, the Banks, and the appellants, the Unsecured Creditors Committee and Mobil Oil Corporation, a major unsecured creditor, were all represented. After the hearing the bankruptcy court entered an order (the amended order), which is the source of dispute on this appeal. The amended order authorized the extension of new credit, including an immediate advance of $60,000 in cash and $175,000 made available in the form of letters of credit, with authority for the debtors to use the cash collateral pursuant to section 363.[2] As an incentive for the Banks to extend this further credit, they were granted first and senior replacement liens in all of the debtors' assets pursuant to section 364. The debtors also agreed to

---

**1.** Section 364 of the Code authorizes the trustee to operate the debtor's business and obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) as an administrative expense. 11 U.S.C. § 364(a). If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense, the court may authorize the obtaining of credit or incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.
11 U.S.C. § 364(c).

**2.** Section 363 allows the trustee to use, sell, or lease cash collateral, subject to prescribed conditions. *See* 11 U.S.C. § 363.

"settle all controversies regarding the validity of the Banks' security interests ... by waiving any objections they may have with respect thereto...." [3] The order further specifically stated that the validity of the liens granted "shall not be affected on appeal by reversal or modification of the authorization contained herein unless this Order is stayed pending appeal."

Appellants immediately appealed the bankruptcy court amended order to the district court. Appellants did not, however, obtain a stay of the order pending this appeal. Because no stay was in effect, the Banks filed a motion for dismissal pursuant to Bankruptcy Code section 364(e). The district court granted the Banks' motion and ordered dismissal. 65 BR. 358. Appellants now appeal for relief to this court.

Section 364(e) provides:

The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

Appellants argue that dismissal pursuant to section 364(e) was in error because that section does not apply to the amended order. They argue further that even if section 364(e) does apply, the Banks did not extend money in good faith and thereby lost section 364(e)'s protection.

### I. Does section 364(e) apply?

The contention that section 364(e) should not apply stems from the phrase "under this section," which limits the protection under subsection (e) to authorizations made under section 364(c). The amended order was purportedly made pursuant to section 364(c), but appellants argue that it exceeded the bounds allowed by section 364(c) and

therefore is not entitled to 364(e) protection.

11 U.S.C. § 364(c) provides:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

The express language of this subsection suggests that the priority or lien granted thereunder is limited to securing the newly incurred debt authorized by that provision. Appellant urges this interpretation and finds support in two bankruptcy cases. *See In re FCX, Inc.*, 54 B.R. 833, 841 (Bankr.E.D.N.C.1985) (Section 364(c)(1) authorizes super priority for postpetition loans, not prepetition loans); *In re Monarch Circuit Industries*, 41 B.R. 859, 862 (Bankr.E.D.Pa.1984) ("the terms of § 364(c) appear to limit the extent of the priority or lien to the amount of the credit obtained or debt incurred *after* court approval") (emphasis in original).

We read the amended order at issue as expressly granting section 364(c) priority only to postpetition debt. The bankruptcy court stated that "[a]ll Liabilities *other than Pre-petition Liabilities*, shall, to the extent not paid from collateral granted herein, be accorded priority pursuant to Section 364(c)(1)...." It also asserted that "the interest granted herein to the Banks in such Free Asset [previously unencumbered assets] shall be limited to security for only those Liabilities which are not Pre-petition Liabilities;...." This portion

---

**3.** The unsecured creditors committee had alleged that the security interests for the loans had been arranged in a manner that constituted a fraudulent conveyance.

of the order, therefore, complied with appellants' interpretation of section 364(c).

The more troublesome aspect of the amended order is the portion in which the debtors agreed to "settle all controversies regarding the validity of the Banks' security interests...." Appellants contend that this aspect of the order, in essence, gave the Banks valid, perfected security interests securing *prepetition* loans. This, according to appellants, is beyond the scope of section 364(c) and therefore not protected by section 364(e).

This aspect of the order does not fit neatly into any of the aforesaid categories of section 364(c). It did not precisely create a new lien or priority; instead, it prohibited any challenges to the validity of already existing liens. This aspect of the order, however, was part of the whole "package" authorized under section 364(c). The question is whether section 364(c) allows such a transaction. *In re FCX* and *In re Monarch* both hold that section 364(c) authorizes priority or liens only for postpetition debt, not *prepetition* debt. This order in controversy bolstered liens securing prepetition debt, and thus may exceed the scope of section 364(c).

Even if the order were interpreted to exceed the scope of section 364(c), however, we are aware of no case authority holding that section 364(e) protection is unavailable to orders purportedly granted under section 364(c) but determined to have exceeded section 364(c)'s scope. *In re Monarch* expressly declined to address this section 364(e) question. *See* 41 B.R. at 862. *In re FCX* never mentioned section 364(e) after ruling that section 364(c) does not authorize "super priority" for prepetition loans. *See* 54 B.R. at 841. If an order exceeded the scope of section 364(c), is it not entitled to section 364(e) protection, if purportedly granted under section 364(c) and relied on by the debtor and lending party concerned in good faith?

Appellants assert several policy reasons for their position that section 364(e) does not protect this amended order. First, appellants assert that "cross-collateralization" is generally disfavored as a financing mechanism. *See, e.g., In re FCX, Inc.,* 54 B.R. at 840; *In re Roblin Industries,* 52 B.R. 241, 244 (Bankr.W.D.N.Y.1985); *In re Antico Mfg. Co.,* 31 B.R. 103, 105 (Bankr.E.D.N.Y.1983); *In re Vanguard Diversified, Inc.,* 31 B.R. 364, 366 (Bankr.E.D.N.Y. 1983). *In re Vanguard* set out a four part test to determine whether to allow cross-collateralization, which other courts have followed. *See In re Roblin,* 52 B.R. at 244; *In re Antico,* 31 B.R. at 105. Appellant argues that approving the cross-collateralization order and thus protecting it from review by applying the section 364(e) language, "unless ... stayed pending appeal," thwarts the policy disfavoring cross-collateralization.

Cross-collateralization, however, although controversial, is often used, and even the courts that discourage it have approved its use. *See, e.g., In re Beker Industries,* 58 B.R. 725, 742–43 (Bankr.S.D.N.Y.1986); *In re B & W Tractor Co.,* 38 B.R. 613, 617–18 and 617 n. 12 (Bankr.E.D.N.C.1984); *In re Antico,* 31 B.R. at 105–06; *In re Vanguard,* 31 B.R. at 367. Because cross-collateralization seems to be used and approved, and appears to be a valuable financing tool in arranging postpetition credit to keep debtors in reorganization going, Congress would not have intended to exclude all cross-collateralization orders categorically from section 364(e)'s protection.

Appellants argue further that using section 364(e)'s language to shield the order in controversy from scrutiny, prohibiting any challenge to the Banks' security interests, is unfair to unsecured creditors and allows secured creditors to abuse the system. They point out that the Banks would receive protection from any challenge to their security interests totalling some $4,000,000 value in exchange for an advance of only $60,000 in cash and making $175,000 available through letters of credit. If the Banks' security interest can be so fortified, the unsecured creditors, including plaintiffs, lose the chance to pursue the debtors' assets until the Bank's liens securing $4 million worth of debt are satisfied. Appellants point out that this could set a prece-

dent for any secured creditor whose interest may be subject to challenge to take advantage of an "emergency" situation, and arrange a transaction similar to the one in controversy by advancing a relatively small amount of new credit.

There are countervailing strong policy reasons to encourage creditors to extend additional postpetition credit to debtors. Chapter 11 envisions the continued operation of a debtor's business, but the need for fresh capital and difficulties in obtaining the capital and wherewithal to run a business are obvious. Lenders and suppliers are understandably reluctant to do business with a debtor who is in bankruptcy and who may have few, if any, unencumbered assets to offer as collateral. Section 364 is designed to encourage postpetition financing by authorizing security in the debtor's assets and giving the lender priority over administration costs. It provides for approving such loans on an expedited basis after notice and a hearing. Subsection (e), in turn, protects the authorization for priority on a lien from reversal or modification on appeal, as long as the order has not been stayed pending appeal and the creditor extended credit in good faith. This good faith requirement allays creditors' concerns about abuse of the process.

The *In re FCX* court discussed the competing concerns involved in postpetition financing:

> A lender makes advances in reliance upon such orders authorized by § 364 and "(t)he chapter 11 process would be undermined if this Court were to, in effect, undo those orders...." ... Nevertheless, there is a difference between approval of a priority and a lien, which are specifically authorized under § 364, and other terms which are not. Furthermore, the court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of unsecured creditors.

54 B.R. at 838 (citations omitted).

Whether section 364 authorizes prohibiting a challenge to prepetition security interests was of concern to appellants, and

they challenged this aspect of the amended order before the approval was given by the bankruptcy court. The unsecured creditors' interests are a concern in arranging postpetition financing, and several of the courts allowing cross-collateralization have noted that the unsecured creditors did not object. *See, e.g., In re Beker,* 58 B.R. at 742; *In re Vanguard,* 31 B.R. at 367. In this case, the appellants objected because they viewed their claims as compromised by the prohibition against challenging security interests which, if defeated, could make assets available for distribution to the unsecured creditors. The unsecured creditors were, however, allowed to express their concerns and objections at the hearing, which was held after adequate notice, and as long as the order was authorized under section 364, the order should be protected by section 364(e).

We note that in this case the Banks did not receive complete cross-collateralization. The order in several contexts seems to limit section 364(c) priority and security interest to *post* petition debt. The order thus did not unequivocally prefer the Banks over unsecured creditors by giving them security interests in previously unencumbered assets to secure prepetition debt, known as "forward cross-collateralization." *See In re Beker,* 58 B.R. at 742 n. 5; *In re Antico,* 31 B.R. at 105. We also hold that the mere allowance of cross-collateralization in some degree as a financing tool should not categorically deprive an order of section 364(e) protection. More important than the nature of the advantage given the Banks for extending further credit is the fact that unsecured creditors failed to obtain a stay.

Appellees argue that limiting section 364(e) protection to new advances only undercuts the goal of providing incentives to the creditor to extend postpetition credit. As this case illustrates, a more traditional section 364(c) arrangement, such as the one entered on March 31, 1984 between these parties, may not suffice. The debtors were not making payments and needed new capital, but the Banks were not willing to cooperate on the same terms and conditions which had not been fulfilled. The Banks

were seeking relief from the automatic stay by reason of default. The term in the amended order protecting the Banks from challenge to their security interests was necessary to induce the Banks to extend more credit in a risky situation. Since the debtor was experiencing continuing losses, more was at risk. The collateral base of the Banks was being depleted. Thus, if section 364(e) protection were limited in all cases to new advances, creditors might not be willing to extend more credit, and debtors would fail, probably after depletion of assets and collateral; all creditors would be losers in that situation.

The amended order in question used the word "settle" in referring to the agreement not to challenge the security interests, but the district court correctly found that the order was not so much a "settlement" as a term or condition of the bargain made between the debtor and creditor to encourage the creditor to extend further postpetition credit. In this situation the bankruptcy court should not be required to scrutinize carefully the legal arguments made and the position of the parties with respect to a new and amended loan agreement. The bankruptcy court thus did not violate the Supreme Court's mandate requiring strict scrutiny of settlements in bankruptcy. *See Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968).

■ Appellants finally argue that applying section 364(e) to protect the terms of the amended order results in a denial of due process. This argument is without merit. The order was not entered until after adequate notice and a hearing, in which appellants fully participated. Furthermore, and even more important, appellants could have avoided the application of section 364(e) by seeking a stay of the order pending appeal. Appellants might also have filed a motion for relief from the order pursuant to Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60, or a motion for a new trial under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59. The unsecured creditors, despite the language of the amended order, do not suggest that they ever sought a stay. Appellants took advantage of none of these available procedures, and therefore cannot now claim a denial of due process. The mere allowance of cross-collateralization to some degree as a financing tool should not categorically deprive an order of section 364(c) protection.

■ After consideration of the arguments and policy questions involved, we conclude that the amended order should also be deemed to be protected by the provisions of section 364(e). This amended order seems to some degree at least to have limited the newly created priority and security interest to postpetition debt, and to that extent would fall within the purview of section 364(c). It did not, in our view, exceed the intended scope of section 364. It did not create any new lien as such securing prepetition debt; rather, at most, it further secures prepetition debt by prohibiting any challenge to the prepetition security interests. Under the circumstances of this case, this condition seems to have been necessary to induce the Banks to extend more credit, which is the underlying purpose of section 364.

> These provisions seek to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge. The proper recourse for the objecting creditor is to get the transaction stayed pending appeal.

*In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir.1982). In the absence of any case law clearly indicating that section 364(e) cannot extend to the type of condition imposed in the bankruptcy court's order, we conclude that it does not exceed section 364(e)'s protection. This ruling does not ignore the unsecured creditors' interests. "The proper recourse for the objecting creditor is to get the transaction stayed

pending appeal." *In re EDC Holding Co.* at 947.

## II. *Did the Banks act in bad faith?*

■ Even if section 364(e) applies, as we have held, appellant contends that it does not protect the Banks in this case because they did not extend credit in good faith. The Bankruptcy Code does not attempt to define the term "good faith." The definition most often used is that of the Uniform Commercial Code at section 1–201(19): "Good faith means honesty in fact in the conduct or transaction concerned." A finding of good faith is a finding of fact, which is subject on review to the clearly erroneous standard. *See generally,* Fed.Rule Civ.P. 52; Bankruptcy Rule 7052. Both the bankruptcy court and district court found that the Banks had acted in good faith, limiting our review to the question whether these findings constituted clear error.

Appellants first argue that the Banks acted in bad faith by working closely with the debtors, not intending to lend any more money unless the debtors agreed not to challenge their security interests, and then waiting until an "emergency" existed to inform the court of their position. The district court found that this assertion basically charges the Banks with a conspiracy of sorts and assumes that the debtors and bankruptcy court were both duped into the agreement. The district court refused to find that the bankruptcy court had been duped by a conspiracy and concluded that the bankruptcy court justifiably found that a true emergency existed. The home heating oil situation is not disputed. At the time of the Amended Order, the debtors had only 120 gallons of oil available and already had orders for 11,000 gallons. The debtors' suppliers were reluctant to deliver more oil without certainty of payment, and the Banks were the only creditors willing to extend any more credit to the debtors, and only on the conditions heretofore discussed. Under these circumstances, and absent any evidence of a "conspiracy," the finding that the emergency was not contrived was not clear error.

Appellants' second argument is that the notice to the unsecured creditors was inadequate and the Banks acted in bad faith by proceeding on short notice. The Bankruptcy Code requires only "such notice as is appropriate in the particular circumstances...." 11 U.S.C. § 102(1)(A). The district court found that the notice in this case was adequate under the circumstances. In emergency situations, as existed here, the notice requirements are necessarily more relaxed. The unsecured creditors received notice of the hearing, and they participated fully in the hearing. Appellants argue that the Banks and debtor had discussed an informal agreement earlier, and that they could have informed the other creditors earlier that the debtors would need relief from the court. This argument presumes that the Banks knew the debtor would seek an amended order from the court. The question is not what notice might have been given, but whether the notice actually given was adequate. In this case, we cannot find the district court to have been in error in deeming the notice to have been sufficient under the circumstances. The shortness of the time does not clearly indicate bad faith on the part of the Banks.

Finally, appellants argue that the Banks proceeded despite knowledge that the terms of the amended order would be challenged. This action allegedly constituted bad faith. The statute was intended to protect "the lender who believes his priority is valid but cannot be certain that it is, because of objections that might be upheld on appeal." *In re EDC Holding Co.,* 676 F.2d 945, 947 (7th Cir.1982). In this case, the Banks may have been uncertain about whether the terms of the order would be challenged or subject to reversal on appeal, but they cannot be deemed to have *known* that the conditions approved were improper. We find no clear error, therefore, in the determination that the Banks did not act in bad faith in this respect.

We accordingly AFFIRM the decision of the district court.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment of the court, but write separately to emphasize the limit-

ed precedential effect of our holding in this case and to explain why I read the bankruptcy court's amended order as purporting, at least, expressly to grant § 364(c) priority to pre-petition debt as well as to post-petition debt.

At the time of the filing of the debtors' voluntary petitions under Chapter 11 of the Bankruptcy Code, as the amended order recites, the debtors owed the Banks approximately $4.4 million. The Banks claim that this indebtedness was secured by valid liens on all of the debtors' assets. The unsecured creditors challenged the validity of the Banks' liens, but the bankruptcy court, which was familiar with at least some of the evidence bearing on that issue, found that there was "little likelihood" that the objections to the liens would be sustained. The bankruptcy court also found that the litigation expense to which the debtors' estates would be subjected if the objections to the Banks' liens were fully litigated would be at least $200,000. Under these circumstances, and in view of the unwillingness of the Banks to advance further credit or agree to the continued use of cash collateral unless the objections to the liens were waived, the court found that waiver of the objections to the liens would be in the best interests of the estates and their creditors.

It was against this background that the bankruptcy court authorized the obtaining of additional credit and granted "replacement liens" on all of the assets of the debtors. The amended order expressly stated that the replacement liens were granted as security for "all" liabilities of the debtors, including pre-petition liabilities, and at two separate places in the amended order it was expressly stated that the replacement liens were granted "pursuant to Section 364 of the Bankruptcy Code."

Pursuant to Section 364(c)(1) of the Bankruptcy Code the additional credit authorized by the amended order was given priority over all administrative expenses, and it is true that the pre-petition liabilities were not given priority over administrative expenses. The replacement liens were clearly intended to give the Banks priority over unsecured creditors for the full amount of the pre-petition liability to the Banks, however, and I do not read the amended order's reference to Section 364(c)(1) as suggesting in any way that the bankruptcy court did not contemplate that the replacement liens, in their entirety, were granted "pursuant to Section 364...." That understanding is confirmed by the penultimate paragraph of the amended order, which reads as follows:

"This order is entered pursuant to Section 364 of the Bankruptcy Code. The validity of any credit extended by the Banks and any priority or lien granted pursuant to this Order shall not be affected on appeal by reversal or modification of the authorization contained herein unless this Order is stayed pending appeal."

I am uncertain whether Section 364 ought to be read as authorizing the bankruptcy court to grant liens securing pre-petition debt as well as the additional debt incurred on the strength of the amended order. Section 364(c)(2) does empower the bankruptcy court to authorize the incurring of additional debt "secured by a lien," however, and the statute does not expressly say that under no circumstances may such a lien secure pre-petition debt as well. In the case at bar everyone concerned was put on notice that the authorization to obtain credit and the grant of replacement liens securing all of the indebtedness to the Banks were made "under this section" (i.e. under Section 364) as far as the bankruptcy court was concerned, and given the particular circumstances of this case I cannot say that the bankruptcy court was completely unreasonable in construing the scope of its authority as broadly as it did. The unsecured creditors having been made aware of the bankruptcy court's position that under Section 364(e) the validity of the replacement liens would not be affected by reversal on appeal unless the amended order were stayed, it seems to me that the unsecured creditors acted at their peril in failing to obtain such a stay. I believe, therefore, that the district court acted correctly in dismissing the appeal whether or not the

granting of replacement liens securing both pre-petition and post-petition indebtedness was in fact authorized by Section 364.

MERRITT, Circuit Judge, dissenting.

This case presents a rather simple issue: What is the scope and purpose of section 364(e) of the Bankruptcy Code? This section requires the issuance of a stay pending appeal before there can be a "reversal or modification on appeal" of a bankruptcy order granting a creditor "superpriority" in exchange for making an emergency extension of credit to a chapter 11 creditor. The purpose of the subsection is to deny unsecured creditors the right of appeal and thereby deny their right to upset a lien given superpriority unless the closing and completion of the credit transaction has been delayed by a stay granted by the Bankruptcy Court. This speeds the extension of emergency credit because lenders are assured that their security for the loan—the superpriority—will not be taken away after the funds have been advanced. If the security for such loans could be upset on appeal after the debtor has received the loan proceeds, there would be little incentive for a lender to make loans that keep chapter 11 debtors afloat.

In the case at bar, the banks made a $60,000 superpriority loan supplemented with a $175,000 letter of credit in order to allow the debtors to supply their customers living on the upper peninsula in Michigan with heating oil in the dead of winter. Obviously the loan and letter of credit are covered by section 364(e) and may not be challenged by the unsecured creditors because no stay was entered.

The more difficult question is whether the bankruptcy court's action in making incontestable more than three million dollars in prepetition loans made by the banks is likewise within section 364(e), thereby denying the unsecured creditors a right to appeal the Bankruptcy Court's ruling in this respect. I would hold that the right to appeal this aspect of the ruling is not cut off by section 364(e). This section is not designed to cut off the right to appeal rulings on *prepetition* matters, such as

fraudulent conveyances and preferences, but only affects authorized postpetition loans and liens to secure such loans. Lenders should not be permitted to use their leverage in making emergency loans in order to insulate their prepetition claims from attack. The banks here should not be permitted to make several million dollars in prepetition loans secure and uncontestable at the expense of the other creditors by the simple expedient of making a section 364 postpetition loan. The statute does not contemplate denying the right of appeal in such situations, and there is no authority permitting such a constraint on judicial review. I would therefore reverse the District Court's ruling that the bank's prepetition security interests are not subject to review and I would permit the unsecured creditors to pursue the fraudulent conveyance claim.