In re SAYBROOK MANUFACTURING CO., INC., et al., Debtors.

Seymour SHAPIRO, et al., Appellants,

v.

SAYBROOK MANUFACTURING CO., INC., et al., Appellees.

Civ. A. No. 89–156–3–MAC(DF).

United States District Court, M.D. Georgia, Macon Division.

May 20, 1991.

**495**

FITZPATRICK, District Judge.

This case is before this court on appeal from the bankruptcy court, Honorable Robert F. Hershner, Jr., presiding. Jurisdiction is based on 28 U.S.C. § 158(a) (West Supp.1991). On appeal, the bankruptcy court's findings of fact are not to be set aside unless clearly erroneous, but questions of law may be examined freely. *In re Rainwater*, 124 B.R. 133, 135 (M.D.Ga. 1991). After examining the facts and the law, the court concludes that this appeal is moot pursuant to 11 U.S.C. § 364(e) and so affirms the bankruptcy court.

## I. BACKGROUND

The facts essential to the resolution of this appeal are fairly straightforward. The Sero Company, Saybrook Manufacturing Company, Inc., Clinton Marine Products, Inc. and Sero Holdings, Inc. (collectively termed "Sero") filed petitions for relief under Chapter 11 of the United States Bankruptcy Code on December 22, 1988. The bankruptcy court consolidated the cases on the next day.

Manufacturer's Hanover Trust Company and Manufacturer's Hanover Bank (Delaware) ("MH") were undersecured creditors of Sero. On December 23, Sero filed a motion, with the consent of MH and the other banks involved, seeking approval of a financing plan under which MH was to lend further funds to Sero in exchange for a provision stating that all pre-petition and post-petition property of the debtor's estate would serve as security for the loan. The bankruptcy court approved of this plan in an emergency order on that same day.

The appellants objected, and a hearing was held on January 28, 1989. On January 31, the bankruptcy court entered an order overruling the objections, which was followed by a supplementary order on February 3. The appellants then gave notice that they were appealing the orders of the bankruptcy court. Their motion for a stay pending appeal was denied by that court on February 23.

Ward Stone, Jr., Macon, Ga., Amy Marie Flick, Atlanta, Ga., for appellants.

Jerome Lewis Kaplan, Macon, Ga., C. Richard Rayburn, Jr., Charlotte, N.C., C. David Butler, Atlanta, Ga., Ezra H. Cohen, Atlanta, Ga., for debtors.

## II. DISCUSSION

■ The practice of allowing a debtor's pre-petition property to serve as collateral for a post-petition debt is known as cross-collateralization. As defined by the Second Circuit, cross-collateralization occurs when:

> ... in return for making new loans to a debtor in possession under Chapter XI, a financing institution obtains a security interest on all assets of the debtor, both those existing at the date of the order and those created in the course of the Chapter XI proceeding, not only for the new loans, the propriety of which is not contested, but for existing indebtedness to it....

*In re Texlon Corp.*, 596 F.2d 1092, 1094 (2nd Cir.1979). In other words, if cross-collateralization is allowed a creditor extending post-petition credit acquires a priority security interest in the debtor's assets not only for the new loans, but also for any pre-petition debts owed to it. There can be no question that this works to the detriment of other unsecured creditors since it diminishes the pool of assets available to be distributed to them in the event the case is converted into a Chapter 7 liquidation. Cross-collateralization has thus been held to be a disfavored means of financing which may be authorized only after its necessity has been established at a hearing held on notice to creditors. *In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr.E.D.N.Y.1983).

The key question in this appeal is whether cross-collateralization falls under the protection of § 364(e) of the Bankruptcy Code, which provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the ap-

peal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). These financing arrangements protected by § 364(e) include the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b), (2) secured by a lien on property of the estate that is not otherwise subject to a lien, or (3) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

The appellants claim that cross-collateralizations are not protected by § 364(e), since it insulates only post-petition extensions of credit from appeal and does not authorize the collateralization of pre-petition debt. The appellees contend that cross-collateralizations are well within the protection of § 364(e), and since MH extended credit in good faith and no stay pending appeal was granted, this appeal is moot. The issues to be decided are whether the financing arrangements provided by § 364 include cross-collateralization and, if so, whether MH exercised good faith.

### 1. Is Cross–Collateralization Protected by § 364(e)?

Cross-collateralization is neither specifically allowed nor forbidden by the Bankruptcy Code. The concept has been neither endorsed nor rejected by Congress in any amendments to the Code. Since there is apparently no statutory authority or clear evidence of congressional intent, the court will rest its analysis on case law and the general policies behind the Code. There are, unfortunately, few cases which directly address the question of whether cross-collateralization is allowed by the Code and thus protected by § 364(e), although those discussing the requirements needed to justify the practice inherently endorse its use under certain circumstances.[1] There ap-

---

1. The requirements to be shown by the debtor-in-possession before cross-collateralization can be allowed were given in *Vanguard,* 31 B.R. 364, as follows:

1. Absent the proposed financing, its business operations will not survive;
2. It is unable to obtain alternative financing on acceptable terms;

pears to be no precedent in the Eleventh Circuit.

*In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir.1987), involved facts and claims very similar to those in the case at bar. Several creditors appealed the district court's affirmance of a bankruptcy court's authorization, without creditor approval, of a cross-collateralization plan. A motion for a stay pending appeal was denied, but a stay was later granted while the appeal was in progress. The appellants argued that § 364(e) did not cover a lien to secure a pre-petition loan, but if it did then a stay was granted and the creditor receiving the lien had acted in bad faith. (The issue before the court was whether the appeal was moot under § 364, not the legality of cross-collateralization per se. *Id.* at 1488–89 n. 6.)

The court rejected all of these arguments. After conceding that cross-collateralization is not expressly permitted by § 364, the court looked to the overall reason behind that section. "Section 364 was designed to provide a debtor a means to obtain credit after filing bankruptcy. As such, cross-collateralization clauses appear to be covered by section 364 and in turn subject to section 364(e)." *Id.* at 1488. Section 364(e), in turn, was designed to protect a lender extending post-petition credit by preventing the reversal of a cross-collateralization clause unless a stay was obtained pending appeal. Notably, the court rejected the argument that the favored creditor had not relied on the bankruptcy court's order since it recouped its post-petition outlay, because this claim failed to consider the lender's expectation of making a profit, without which there

would have been no extension of credit. *Id.* at 1488–89.

After declaring that the stay granted at the creditors' second request had come too late to avoid mootness under § 364, the court examined the question of good faith, and found no reason to believe that it was lacking. The appellants claimed that the favored creditor lacked good faith because the concept of cross-collateralization violated the fundamental tenet that like creditors must be treated alike. This argument failed because the tenet relied upon by the creditors conflicted with another, superior, tenet of bankruptcy law—the rehabilitation of debtors. The mere fact that case law existed disallowing cross-collateralization was held insufficient to show bad faith. Finally, the court rejected the claim that the favored creditor acted in bad faith because it failed to obtain the consent of other creditors before entering into the loan agreement, since § 364 mandates notice and hearing, but not consent. *Id.* at 1490–91.

After an emergency phone hearing, the bankruptcy court in *In re Ellingsen Mac-Lean Oil Co., Inc.*, 834 F.2d 599 (6th Cir. 1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988), gave to the creditor banks as an incentive to lend further funds first and senior replacement liens on all the debtor's assets. As part of the agreement, the debtors agreed to waive all objections to the banks' security interests. The appellants either did not try or failed to obtain a stay from the bankruptcy court, but argued on appeal that § 364(e) did not apply to the order in question or that if it did, the banks had not extended credit in good faith.

3. The proposed lender will not accede to less preferential terms; and
4. The proposed financing is in the best interests of the general creditor body.
*Id.* at 366. The bankruptcy judge in the case at bar found that each of these factors had been met. (Trans. January 31, 1989, pp. 7–8).
By allowing cross-collateralization, *Vanguard* and other cases, *see, e.g., Matter of Borne Chemical Co., Inc.*, 9 B.R. 263 (Bankr.D.N.J.1981), *In re General Oil Distributors, Inc.*, 20 B.R. 873 (Bankr.E.D.N.Y.1982), *In re Antico Mfg. Co.,*

*Inc.*, 31 B.R. 103 (Bankr.E.D.N.Y.1983), *In re B & W Tractor Co., Inc.*, 38 B.R. 613, 617 n. 12 (Bankr.E.D.N.C.1984), *In re FCX, Inc.*, 54 B.R. 833 (Bankr.E.D.N.C.1985), have implicitly approved of the concept. While it is true, as appellants claim, that some of these cases involved different circumstances, degrees of collateralization and liens than the case at bar, they do stand for the general principle that cross-collateralization can be allowed in certain instances.

Recognizing that cross-collateralization is not expressly allowed by § 364(c), the court nonetheless held that the bankruptcy court's order was protected from appeal, since § 364(e) shelters orders purportedly granted under § 364(c) but exceeding that subsection's scope. The court essentially based its holding on a reliance argument—if an order is relied upon in good faith by the lender and the debtor, it should be protected even if it exceeds the scope of § 364(c). In response to the appellant's policy arguments against cross-collateralization, the court reasoned that Congress would not have wanted to exclude the practice from the protection of § 364(e) and gave more weight to the purpose of Chapter 11 of reorganizing the debtor, which may require new credit. After noting that the banks were not totally preferred since they had not received a complete cross-collateralization, the court declared that "the mere allowance of cross-collateralization in some degree as a financing tool should not categorically deprive an order of section 364(e) protection. More important than the nature of the advantage given the Banks for extending further credit is the fact that unsecured creditors failed to obtain a stay." *Id.* at 602–03. Finally, the court decided that the banks had not acted in bad faith. *Id.* at 605.

A concurring opinion reasoned that the bankruptcy court had not acted unreasonably in construing the Code broadly, and since the parties had notice and the creditors failed to get a stay, the district court acted correctly in dismissing the appeal pursuant to § 364(e) whether the Code allowed cross-collateralization or not. *Id.* at 605–07 (Nelson, J., concurring). The dissent, relied upon by the appellants in this case, declared that § 364(e) only cuts off appeals of post-petition matters and so does not apply to cross-collateralization, which allows lenders to use their leverage in making emergency loans to insulate their pre-petition indebtedness from attack. *Id.* at 607 (Merritt, J., dissenting).

*Texlon,* 596 F.2d 1092, is the leading opinion concerning cross-collateralization under the Bankruptcy Act, although the court did not discuss the merits of the concept at great length. The court hinted that it disapproved of cross-collateralization, even stating that it could more accurately be called a post-petition preference. After finding nothing in the Act forbidding or advocating the practice, however, the court specifically held that cross-collateralization was not impermissible in all circumstances, although the bankruptcy court had erred by allowing it through an ex parte order. 596 F.2d at 1097–99. *Texlon* has been narrowly interpreted in later cases, and has little bearing on the case at bar since notice was given and a hearing was held after the emergency order was issued.

In *In re Roblin Industries, Inc.,* 52 B.R. 241 (Bankr.W.D.N.Y.1985), the court ultimately denied approval of the proposed financing order since parts of it were unnecessary, but approved of the concept of cross-collateralization. The court reasoned that while cross-collateralization was not expressly allowed, different sections of the Code authorized different parts of the concept. Section 364(c) allows post-petition advances to be secured by pre-petition and post-petition assets as well as by a super-priority grant against unencumbered assets. Sections 361 and 363(e) allow secured parties to acquire a security position on post-petition assets as adequate protection for the use of collateral which secures the pre-petition obligations. The court decided that taken together, these parts of the Code implicitly approved of the concept of cross-collateralization. *Id.* at 246–48.

The court in *In re Beker Industries Corp.,* 58 B.R. 725 (Bankr.S.D.N.Y.1986), also approved of cross-collateralization, although this case is of little precedential value here since the committee of unsecured creditors consented to the idea. Of greater importance is the court's observation that while cross-collateralization is not expressly permitted by the Bankruptcy Code, the Code was enacted against the backdrop of the Act, and any intention by Congress to change the prior law, e.g. *Texlon,* 596 F.2d 1092, should have been expressly or clearly inferred. 58 B.R. at 741–42.

In contrast to the above cases, the concept of cross-collateralization was flatly rejected by *In re Monach Circuit Industries, Inc.*, 41 B.R. 859 (Bankr.E.D.Penn. 1984). After noting that several other courts had read *Texlon* as disapproving only of the practice when allowed without notice and hearing, the court rejected cross-collateralization on its merits, reasoning that the security interest and priority which the lender received was in excess of the post-petition value it gave and so constituted a preference. Furthermore, the court held that the practice was not authorized by the language of the Code, stating that § 364(c) allowed a court to grant a creditor a priority over administrative expenses or liens only to the extent of credit obtained or debt incurred *after* court approval, which did not include pre-petition indebtedness. 41 B.R. at 861–62.

The approval of a proposed financing agreement involving cross-collateralization was also denied in the case of *In re Tenney Village Co., Inc.*, 104 B.R. 562 (Bankr.D.N. H.1989). After examining the cases on both sides of the issue, the court was persuaded by *Monach* and distinguished the cases allowing cross-collateralization on their particular circumstances. Significantly, however, the court also distinguished appellate cases refusing to disturb cross-collateralization provisions from the facts before it, stating that they relied on the mandate of § 364(e) and citing *Ellingsen*, 834 F.2d 599, and *Adams Apple*, 829 F.2d 1484. 104 B.R. at 569–70.

 A comparison of the above cases and the policies discussed in them leads this court to the conclusion that cross-collateralization is protected by § 364(e). While this practice may violate some policies of bankruptcy law, it is in keeping with the overall purpose of a Chapter 11 reorganization, which is "to enable a business to rehabilitate itself and become a profitable going concern." *In re International Horizons, Inc.*, 15 B.R. 798, 800 (Bankr.N.D. Ga.1981), *rev'd on other grounds*, 21 B.R. 414 (N.D.Ga.1982). This broad purpose argues persuasively against a strict interpretation of the Bankruptcy Code, and in any

case the Code has not been amended by Congress to forbid cross-collateralization despite the growing number of cases allowing it. A general rule distilled from the weight of authority would be that while cross-collateralization is a disfavored method of financing to be used as a last resort, and may not be used at all without notice and hearing, it is nonetheless a valid tool in a bankruptcy court's arsenal of means to keep a debtor alive, and so falls within the protection of § 364(e). As one court has stated, the best approach is to examine the facts and circumstances to determine if the estate is being benefited rather than primarily the pre-petition creditor. *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 39 (Bankr.S.D.N.Y.1990). The appellants have launched strong and well-reasoned attacks on the concept of cross-collateralization, but their contentions are not as persuasive as the arguments and precedents mounted against them.

## 2. Did MH Exercise Good Faith?

 The appellants' argument here rests on the fact that MH, the lender in this case, is the same entity whose cross-collateralization plan was rejected in *Texlon*, 596 F.2d 1092, and so the appellants claim that MH did not show good faith in proposing a similar plan in this instance. Also, since the other cases relied upon by MH are distinguishable, they contend MH has not shown good faith by advancing them to support its present position.

These contentions must fail, most obviously because a reading of *Texlon* shows that while that court may not have looked favorably upon the idea of cross-collateralization, it did not forbid it except without a notice or hearing. *Texlon* is thus distinguishable from the case at bar, where notice was given and a hearing was held after the emergency order was issued, and the fact that MH's cross-collateralization plan was rejected there does not show that the appellees acted in bad faith in this case. Additionally, the court believes that the cases cited by MH are far more similar to this one than the appellants seem to realize. Even those which can be distinguished as involving different circumstances show

support for the concept of cross-collateralization. Finally, even if MH's cases were unconvincing the court would not be willing to believe that it acted in bad faith, since the good faith requirement was not "intended to deny protection to lenders who can advance reasonable legal arguments in support of their actions, even if their arguments are ultimately deemed unpersuasive." *Adams Apple*, 829 F.2d at 1490. MH acted in good faith.

## III. CONCLUSION

This court finds that the concept of cross-collateralization as a method of post-petition financing is protected by § 364(e). In addition, there is no reason to believe that the appellees exercised bad faith by entering into a loan agreement involving cross-collateralization with the debtor. Since a stay pending appeal was denied, 11 U.S.C. § 364(e) protects the bankruptcy court's order and renders this appeal moot. Accordingly, the decision of the bankruptcy court is AFFIRMED.

SO ORDERED.